1

2

3

4

5 UNITED STATES DISTRICT COURT

6 EASTERN DISTRICT OF WASHINGTON

7 LUCY FITTERER,

8                              Plaintiff,

9        v.

10 STATE OF WASHINGTON
   EMPLOYMENT SECURITY
11 DEPARTMENT,

12                              Defendant.

NO:  2:14-CV-0404-TOR

ORDER ON PARTIES' CROSS
MOTIONS FOR SUMMARY
JUDGMENT

13

14        BEFORE THE COURT are the parties cross-motions for summary judgment

15 (ECF Nos. 16; 25).  These matters were heard with oral argument on July 24, 2015.

16 Steven C. Lacy appeared on behalf of Plaintiff.  Amy C. Clemmons appeared on

17 behalf of Defendant.  The Court has reviewed the briefing and the record and files

18 herein and heard from counsel, and is fully informed.  For the reasons discussed

19 herein, the Court denies Plaintiff's motion and grants Defendant's motion.

20 //

ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 1

BACKGROUND

Plaintiff filed a complaint in the Superior Court of Washington for Grant County alleging two claims against Defendant, one under Washington State law and one under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. ECF No. 1-2 at 6–8. Before the Superior Court, the parties stipulated to dismissal of the state law claim and for removal of the FMLA claim to this Court. ECF No. 1-2 at 2–3.

Notice of removal was filed in this Court on December 17, 2014. ECF No. 1. Plaintiff filled an amended complaint on January 8, 2015, again asserting both the FMLA and state law claims. ECF No. 5. The parties again agreed to the dismissal of the state law claim, which the Court dismissed accordingly. ECF Nos. 10; 14; 15.

On April 9, 2015, Plaintiff filed a motion for summary judgment on the remaining FMLA claim. ECF No. 16. Defendant responded with a cross-motion for summary judgment on May 26, 2015. ECF No. 25. The Court heard the parties' arguments in support of their motions on July 24, 2015. ECF No. 45.

FACTS

Plaintiff began working for Defendant on August 30, 1999, as a Job Service Specialist in a WorkSource office in Moses Lake, Washington. ECF Nos. 17 at ¶ 1; 18-1 at 2; 26 at ¶ 1. Plaintiff was terminated from this position on May 5, 2011.

ECF Nos. 17 at ¶ 1; 18-17; 26 at ¶1; 28-8.  The numerous reasons Defendant proffered for Plaintiff's discharge are detailed in a twelve-page termination letter. ECF Nos. 18-17; 28-8.  In short, Plaintiff was discharged because:  (1) she submitted incorrect and "dishonest" timesheets; (2) she failed to follow procedures for reporting tardiness and early departure from work; (3) she "inappropriately and in violation of agency policy took a pre-arranged cruise with [her] husband, which was not related to [her] FMLA-approved medical condition;" (4) she had excessive unscheduled and unplanned absences in which she failed to follow procedure; (5) she engaged in unprofessional and inappropriate behavior toward clients and co-workers "demonstrat[ing] a neglect of duty, violation of policy, and reflect[ing] negatively on [Defendant];" and (6) "even after [her] supervisor conducted performance feedback sessions with [her] regarding these very issues, [Plaintiff] did not change [her] behavior and practices but instead continued to disregard the explicit directives of [her] supervisor."  ECF Nos. 18-17 at 3, 4, 7, 8, 9, 10; 28-8 (same pages).  Plaintiff's supervisor stated that "despite being given repeated opportunities to improve [her] performance, behavior and attendance, [Plaintiff has] failed to demonstrate a commitment to correcting behavior and respond to reasonable expectations and directives from management."  ECF Nos. 18-17 at 12; 28-8 at 12.  As such, the letter concluded Plaintiff's "dismissal is more than warranted."  ECF Nos. 18-17 at 12; 28-8 at 12.

This lawsuit is based upon Plaintiff's allegation that her discharge was unlawful because Defendant "negatively factored [Plaintiff's] use of FMLA leave into its decision."  ECF No. 16 at 2; *see also* 5 at ¶ 4.1 ("The actions of Defendant alleged above constitute interference with Fitterer's FMLA rights.").  As such, the Court reviews Plaintiff's history of FMLA leave culminating in her two-week absence in February 2011.

Beginning in 2005, Plaintiff began taking FMLA leave for various medical conditions.  *See* ECF No. 28-6.  From August 2005 to April 2007, Dr. Richard M. Sica signed seven medical notes excusing Plaintiff from work for undisclosed medical conditions.  ECF No. 28-6 at 2–7.  In August 2008, Dr. Sica completed a FMLA leave request form excusing Plaintiff from work to care for a family member who had undergone a full hip replacement.  *Id.* at 8–11.  Receipt of this leave form was acknowledged by Plaintiff's immediate supervisor and the leave was approved by Sharon Lindley, a senior human resources consultant.  *Id.* at 8.

In July 2009, Dr. Sica completed a FMLA leave request form relating to Plaintiff's "chronic migraine headaches."  *Id.* at 12–13.  In that form, Dr. Sica stated that the migraines were to be treated by "prescription drugs" and that Plaintiff "will not be treated by another provider at this time."  *Id.* at 14.  Dr. Sica indicated that because of her condition Plaintiff would not able to perform essential job functions at intermittent intervals for the following year, from July 2009 until

July 2010.  *Id.* at 13, 14.  Dr. Sica further indicated that absence from work for treatment of the chronic migraines would be necessary.  *Id.* at 14.  Receipt of this leave form was acknowledged by Plaintiff's immediate supervisor and the leave was approved by Ms. Lindley.  *Id.* at 12.

Dr. Sica completed another FMLA leave request form in June 2010, answering each question identically to the form completed in July 2009.  *Compare id.* at 13–14*, with id.* at 16–17.  This form again indicated that Plaintiff's chronic migraine condition would require intermittent absences from work for the following year.  *Id.* at 16, 17.  Receipt of this leave form was acknowledged by Plaintiff's immediate supervisor and the leave was again approved by Ms. Lindley.  *Id.* at 15.

On January 6, 2011, Dr. Sica signed a note stating, "[Plaintiff] is to be excused from work January 31st 2011–Feb. 7th 2011 for FMLA as well as from Feb. 8–14 2011 for FMLA vacation.  Patient can resume a normal work schedule on Feb. 15 2011."  ECF Nos. 18-25 at 7; 28-6 at 19.  Plaintiff submitted two leave requests relating to these dates.  ECF No. 18-25 at 9–10.  One form requested leave without pay from January 31, 2011, until February 7, 2011, and contained a leave code indicating the leave was "LWOP – FMLA."  *Id.* at 9.  The other form requested vacation leave from February 8, 2011, until February 14, 2011, and contained a leave code indicating the leave was "Vacation – FMLA."  *Id.* at 10.

ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 5

1    Both forms were received on January 7, 201, by Marcia Henkle, the Area Director

2    of the WorkSource Northcentral Washington Employment and Career

3    Development Division.  ECF Nos. 18-25 at 9–10; 28 at 1.

4        On January 28, 2011, the Friday before Plaintiff's two-week leave was to

5    begin, Plaintiff called her supervisor, Todd Wurl, and stated she was on FMLA

6    leave.  ECF No. 29 at 3.  Mr. Wurl "advised [Plaintiff] that according to her

7    paperwork, her leave did not start until Monday."  *Id.*  Mr. Wurl also told Plaintiff

8    that the office was busy and they needed her help.  *Id.*  Plaintiff arrived at work

9    later and submitted a leave slip requesting a vacation day, which Mr. Wurl

10   forwarded to the human resources department.  *Id.* at 3–4.  Mr. Wurl observed that

11   Plaintiff "appeared and seemed perfectly healthy" when she arrived.  *Id.* at 4.

12       On March 5, 2011, Mr. Wurl learned from an administrative assistant that "a

13   few days" after Plaintiff left on her FMLA leave Plaintiff's step-father came into

14   the WorkSource office.  ECF Nos. 17 at ¶ 19; 18-25 at 12.  The assistant reported

15   that she inquired of Plaintiff's step-father whether Plaintiff "was okay," to which

16   he replied, "oh yes, her and her husband are on a cruise."  ECF Nos. 17 at ¶ 19; 18-

17   25 at 12.  Upon obtaining this information, Ms. Henkle began to question whether

18   Plaintiff was properly using FMLA leave.  ECF No. 28 at 4.

19       On March 17, 2011, a senior human resources consultant sent a letter to Dr.

20   Sica informing him that Defendant had "some concern" regarding the two-week

vacation period and "whether it will qualify for FMLA."  ECF Nos. 18-25 at 14; 28-6 at 21.  The letter further stated,

> To ensure that we are provided with all the medical information we need in order to assure that the federal [FMLA] is being followed, we are requesting your assistance by providing answers to the following questions.  We will also use your detailed responses to determine if [Plaintiff's] request for FMLA meets the guidelines provide [sic] under the FMLA laws.

ECF Nos. 18-25 at 14; 28-6 at 21.  The letter requested a response by March 31, 2011, and included an attached questionnaire.  ECF Nos. 18-25 at 14–16; 28-6 at 21, 25–26.

On March 31, 2011, Ms. Henkle sent a letter to Plaintiff advising Plaintiff that Defendant was considering taking disciplinary action against her based on a number of allegations of misconduct, including the alleged misuse of FMLA leave for her two-week absence in February 2011.  ECF No. 28-5.  In the letter, Ms. Henkle informed Plaintiff of her step-father's statements and stated, "we have attempted to contact your physician several times, via telephone, requesting more information regarding your leave and your FMLA condition during the two week period outlined above.  Your physician has not responded to date."  *Id.* at 3.  Ms. Henkle informed Plaintiff that she had a right to have representation and encouraged Plaintiff to respond to the allegations in the letter, but that any response must be submitted by April 7, 2011.  *Id.* at 4–5.

ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 7

On April 11, 2011, Ms. Lindley sent a letter to Plaintiff informing her that Defendant had still not received a response from Dr. Sica.  ECF No. 28-7 at 2.  The letter concluded, "Since we have received no clarifying information stating how the time spent on a cruise would qualify for FMLA, I am denying your ability to use FMLA for the two week period you were on the cruise—January 31, 2011 through February 14, 2011."  *Id.*

Ms. Lindley sent Plaintiff a subsequent letter on April 13, 2011, indicating that in fact a response had been received from Dr. Sica on April 6, 2011.  ECF No. 28-7 at 3.  The April 13 letter notes, however, that an employee claiming FMLA leave "must be unable to work due to their specific medical condition" and that Dr. Sica's response "did not offer any verification that you were unable to work because of your medical condition during the timeframe of January 31, 2011 through February 14, 2011."  *Id.*  Accordingly, Ms. Lindley indicated that she was denying Plaintiff the use of FMLA leave for the relevant two-week period.  *Id.*

The record contains the questionnaire Dr. Sica completed, dated March 23, 2011.  ECF Nos. 18-25 at 15–16; 28-6 at 25–26.  The following reproduces the questions and Dr. Sica's handwritten answers:

1. Please describe your professional experience and/or educational background that qualify you to respond to questions about Lucy Fitterer's FMLA approved condition.

I am a physician licensed to practice medicine and surgery in Washington. I currently am practicing dermatology and I am board certified in this field. I am a qualified general physician.

2. During the timeframe of January 31, 2011 through February 14, 2011, was Lucy Fitterer under your care for her approved FMLA condition?

Yes – I have been consulting with Lucy Fitterer over the past years for chronic headaches/migraines

3. During the timeframe above, how many visits did Lucy Fitterer make to your office?

Ms. Fitterer was seen in my office 1/24/11 – I do consult with Ms. Fitterer over the telephone often for her conditions.

4. Was Lucy Fitterer considered incapacitated during the period outlined above?

No – However I do not have a day by day account of this time.

5. Was Lucy Fitterer unable to attend work during the time period of January 31, 2011 through February 14, 2011, due to this medical condition?

I was told Feb. 8–14 was approved FMLA vacation time.

6. As Ms. Fitterer's medical provider are you able to confirm her approved condition would require her to be absent from work 67 days during a 15-month time period?

No.

ECF Nos. 18-25 at 15–16; 28-6 at 25–26.

Plaintiff was dismissed from her employment on May 5, 2011, based upon a number of allegations of misconduct. ECF Nos. 18-17; 28-8. The section of her

ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 9

termination letter relating to Plaintiff's alleged misuse of FMLA leave reads:

On January 10, 2011, you submitted a request and were approved for FMLA leave from January 31, 2011 through February 14, 2011.  On January 31, 2011, your step-father visited the Moses Lake WorkSource Office.  When asked how you were doing, he responded you were "great" and "she's on a cruise with her husband."  By your own admission, during the leave you requested for your FMLA condition, you went on a cruise.  FMLA is a benefit protecting employees' jobs when they need to be absent from work for serious medical conditions, including treatment or recovery there from.  Your union representative argued the leave you requested was approved by management; although this statement is correct, the leave was approved, in advance, due to your submittal of a doctor's note indicating you should be excused from work from January 31 through February 14, 2011 for an FMLA-approved absence.

Sharon Lindley, FMLA Specialist for the agency, contacted your physician on January 23, 2011.  Your physician verified Ms. Lindley's contact by submitting another doctor's note stating this fact.  Ms. Lindley contacted your physician to obtain clarifying information regarding the language written on the doctor's note, which said "FMLA Vacation."  Your physician told Ms. Lindley that the note he had written was for your FMLA-approved condition, although he offered no other clarifying information.

Upon receiving conflicting information from your step-father that you were fine and on a cruise, Ms. Lindley attempted to contact your physician several times, via telephone.  Your physician did not return Ms. Lindley's telephone calls.  In order to obtain additional information regarding the January 31 - February 14 FMLA leave, a letter was sent to your physician requesting a response to questions by March 31, 2011.  Your physician's information was received on April 11, 2011.  The information provided indicates you did not meet the requirements to use FMLA during the period between January 31 and February 14, 2011. . . .

. . . .

ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 10

Your physician's response did not confirm your need to take a two-week period of time off from work for treatment due to your condition.

After obtaining more information to verify the validity of your FMLA leave request for the period of January 31 through February 14, 2011, I have determined you inappropriately and in violation of agency policy took a pre-arranged cruise with your husband, which was not related to your FMLA-approved medical condition. Your physician failed to provide information stating you were unable to report to work during this period or that your condition left you incapacitated during this two-week period. Your physician also indicated you did not visit his office or receive treatment during this period of time. You are aware of [Defendant's] FMLA policy and the intermittent use of FMLA leave. You have received numerous copies of the policy and understand the FMLA benefit as you have requested, been approved for and used this benefit several times over the course of your employment with [Defendant]. During the pre-disciplinary meeting you stated you were on a cruise for part of the two-week period but wished you were on the cruise the entire period. I find your statement a blatant disregard for the protection the FMLA is intended to provide employees and gives the taxpaying citizens of Washington a negative perception of public sector employees.

ECF Nos. 18-17 at 5–7; 28-8 at 5–7.

After Plaintiff's termination, the Washington Federation of State Employees AFL-CIO ("WFSE") filed official grievances relating to Plaintiff's termination and the denial of her FMLA leave for the two-week period in February 2011. ECF No. 28-9 at 2, 3. In conjunction with the grievance process, Dr. Sica submitted a letter on June 3, 2011, stating:

As you are aware, Ms. Fitterer has been on Family Medical Leave for some time due to migraine headaches that appear to have their genesis in work stressors caused by reported discriminatory practices of management. A common medical practice, which I followed, was to

ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 11

see if a break from the problem for a few weeks would ameliorate it. She indicated she could, or had, accrued a week of vacation time, and would take leave without pay for the remaining week to see if it worked.  She had that leave pre-approved by [Defendant].

As she was on a trip I couldn't see her regularly, but did communicate with her regularly.  I found that the separation did alleviate the problem, by the second week the headaches had dissipated and she was recharged, anxious to return to work, and hoping to resolve the issues with management in a satisfactory manner, even if disadvantageous to her.

ECF No. 18-26 at 4.

The WFSE's grievances were denied initially by Ms. Henkle and upon reconsideration by Frankie Arteaga, the Deputy Assistant Commissioner for Defendant's Employment and Career Division.  ECF Nos. 28-9 at 5–8 (Step 2 Grievance Response letter, July 14, 2011); 36-1 at 2–5 (Step 3 Grievance Response letter, August 29, 2011).  In the grievance proceedings, Defendant maintained that it had a "right and responsibility to request clarification from an employee's physician when FMLA protected leave is taken" and that Plaintiff did not provide adequate information to verify her entitlement to FMLA leave.  ECF Nos. 28-9 at 7; 36-1 at 3–4; *see also* ECF No. 42.

Following these decisions, the WFSE, "voted not to pursue further processing" of the termination grievance.  ECF Nos. 36-1 at 9; 35 at 6.  The WFSE did further process the FMLA grievance, requesting a pre-arbitration review meeting to attempt to reach a resolution.  ECF Nos. 28-9 at 9; 35 at 6; 42 at 3.  At

ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 12

1  this point, because the WFSE no longer disputed Plaintiff's termination and

2  Plaintiff had already received pay for the disputed week of vacation leave, there

3  would be no financial benefit for Defendant to continue fighting the FMLA

4  grievance.  ECF No. 42 at 3.  The dispute only concerned the characterization or

5  coding of the leave taken, and did not concern any money.  As such, Defendant's

6  representative in the grievance process decided to grant the FMLA's requested

7  remedy "solely to avoid the cost of arbitration because the termination was not

8  being challenged." *Id.* at 4.  A letter granting the remedy—approval and

9  designation of the two-week leave as FMLA leave—was sent to the WFSE on

10  December 19, 2011.  ECF No. 18-26 at 6.  No arbitration or administrative hearing

11  ever took place during the grievance process.  ECF No. 42 at 5.

12                                    DISCUSSION

13         Summary judgment may be granted to a moving party who demonstrates

14  "that there is no genuine dispute as to any material fact and that the movant is

15  entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party

16  bears the initial burden of demonstrating the absence of any genuine issues of

17  material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then

18  shifts to the non-moving party to identify specific genuine issues of material fact

19  which must be decided at trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

20  256 (1986).

ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 13

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable factfinder could find in favor of the non-moving party. *Id.* at 248, 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). Only evidence which would be admissible at trial may be considered. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

## I. Estoppel

As an initial matter, Plaintiff argues that Defendant should be estopped from arguing that Plaintiff was not entitled to FMLA leave during her two-week absence. ECF No. 34 at 7–10. Plaintiff asserts three different grounds for estoppel: judicial estoppel, collateral estoppel, and equitable estoppel. Plaintiff's argument for each is premised on the fact that Defendant granted the WFSE's requested remedy during the grievance process. Plaintiff contends that in granting

the remedy, Defendant took a position in the grievance process that is inconsistent with Defendant's position in the present litigation.

First, Plaintiff asserts the doctrine of judicial estoppel prevents Plaintiff from "asserting one position in the labor dispute and later seeking an advantage in this case by taking a clearly inconsistent position." ECF No. 34 at 7. Under the doctrine of judicial estoppel, a party may be estopped from asserting a certain position in litigation when: "1) the party's current position is 'clearly inconsistent' with its earlier position, 2) the party was successful in persuading a court to accept its earlier position, and 3) the party would 'derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *Williams v. Boeing Co.*, 517 F.3d 1120, 1134 (9th Cir. 2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)).

Plaintiff's application of the doctrine of judicial estoppel to the circumstances of this case is misguided. Even assuming that Plaintiff is correct in asserting that "arbitrations are clearly legal proceedings," there were no arbitration proceedings during the WFSE grievance process. As Plaintiff herself recognizes, Defendant granted the WFSE's requested remedy "[i]n order to avoid the arbitration hearing." ECF No. 34 at 8. Without a hearing before a judicial figure—whether in a court of law or during arbitration—judicial estoppel cannot

1    apply because a party cannot be "successful in persuading a court to accept its

2    earlier position." *See Williams*, 517 F.3d at 1134.

3        Moreover, Defendant's position in the arbitration is not clearly inconsistent

4    with its position before this Court.  During the WFSE grievance process,

5    Defendant consistently argued that Plaintiff was not entitled to FMLA leave during

6    her two-week absence.  *See* ECF Nos. 28-9 at 7; 36-1 at 3–4; 42 at 2.  After the

7    WFSE decided to no longer pursue the termination grievance, Defendant agreed to

8    provide the remedy the WFSE sought on the FMLA grievance—designation of the

9    leave during the two-week absence as FMLA-approved—in order to avoid costs in

10    further arbitration of the matter.  ECF No. 42 at 3.  The letter granting the WFSE

11    the relief it sought did not assert that Defendant had reconsidered its position on

12    the issue, but merely stated that Defendant "is granting the requested remedy" and

13    therefore "consider[s] this grievance resolved" without the need to proceed to

14    arbitration.  ECF No. 18-26 at 6.  This cost-saving decision involved no change in

15    Defendant's substantive position that Plaintiff was not entitled to the leave, which

16    remained consistent from the beginning of the grievance process.[1]  As such, the

17    ────────────────
     [1] Further, the reclassification of the leave as FMLA-approved had no substantive

18    effect on either party and was therefore immaterial.  As clarified during oral

19    argument, Plaintiff had already received pay for the week of leave she took as

20    vacation leave.  The reclassification of that leave as FMLA-approved vacation had

ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 16

decision to grant the WFSE's requested relief was not clearly inconsistent with the defensive position Plaintiff takes in the current litigation and judicial estoppel does not apply.  *See Williams*, 517 F.3d at 1134–35.

Second, Plaintiff argues Defendant should be estopped under the doctrine of collateral estoppel.  ECF No. 34 at 8–9.  Collateral estoppel only applies in situations where, *inter alia*, an issue has "been actually litigated and necessarily determined," *City of Arlington v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 164 Wash. 2d 768, 792 (2008), or "when an issue of ultimate fact has once been determined by a valid and final judgment." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970).[2]  As discussed above, Defendant granted the relief the WFSE sought

no impact upon Defendant financially, but was merely a coding change.  The reclassification also had no effect on Plaintiff's termination, which remained in effect.

[2] The parties have not addressed whether the Court should apply collateral estoppel as articulated by Washington State courts or as articulated by federal courts.  *See, e.g.*, *Ayers v. City of Richmond*, 895 F.2d 1267, 1270 (9th Cir. 1990) ("State law governs the application of collateral estoppel or issue preclusion to a state court judgment in a federal civil rights action.").  Regardless, collateral estoppel, as articulated in either forum, does not apply to the matter before the Court.

ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 17

1   without arbitration or a final determination regarding Plaintiff's entitlement to

2   FMLA leave.  The issue of whether Plaintiff was entitled to FMLA leave during

3   her two-week absence was not conclusively determined during the grievance

4   process and collateral estoppel does not apply.

5        Finally, Plaintiff argues the doctrine of equitable estoppel should preclude

6   Defendant from arguing she was not entitled to FMLA leave.  ECF No. 34 at 9–10.

7   Equitable estoppel, while a flexible concept, generally applies only when "one

8   person makes a definite misrepresentation of fact to another person having reason

9   to believe that the other will rely upon it" and "the party claiming the estoppel . . .

10  relied on its adversary's conduct in such a manner as to change his position for the

11  worse."  *Heckler v. Cmty. Health Servs. of Crawford  Cnty., Inc.*, 467 U.S. 51, 59

12  (1984) (internal quotation marks and citations omitted).

13       Equitable estoppel does not apply in this case because Defendant made no

14  definite misrepresentation of fact.  Defendant's acquiescence to the WFSE's

15  requested remedy was not a statement of fact that Plaintiff was actually entitled to

16  FMLA leave.  Moreover, even if Defendant had made a statement to this effect,

17  Plaintiff has not relied upon that statement to her detriment.  She obtained the

18  remedy the WFSE sought on her behalf through the grievance process and her

19  choice to file the current lawsuit does not constitute a change in her position for the

20  worse.  Equitable estoppel does not apply.

ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 18

Plaintiff attempts to prevent Defendant from defending this action based upon Defendant's decision not to continue fighting the WFSE in the grievance process. That Defendant made a cost-benefit decision not to continue pressing its position that Plaintiff was not entitled to FMLA leave in the grievance process does not equate to Defendant embracing the opposing position, that Plaintiff was actually entitled to FMLA leave. Plaintiff is not entitled to an automatic victory in this Court simply because Defendant settled the union's grievance in an efficient and economical manner.

## II. FMLA Interference Claim

"The FMLA provides job security to employees who must be absent from work because of their own illnesses, to care for [] family members who are ill, or to care for new babies." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1119 (9th Cir. 2001) (citing 29 U.S.C. § 2612). The FMLA represents Congress's attempt to strike a balance between "the needs of both employees and their employers." *Id.* The express purpose of the act, as relevant here, is "to entitle employees to take reasonable leave for medical reasons" "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(2), (3).

"To that end, '[t]he FMLA creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an

equivalent job after using protected leave.'" *Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011) (quoting *Bachelder*, 259 F.3d at 1122).  To safeguard these rights, the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [FMLA]."  29 U.S.C. § 2615(a)(1).

To establish an "interference" claim, a plaintiff must first demonstrate by a preponderance of the evidence that:  "(1) he was eligible for the FMLA's protection, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Sanders*, 657 F.3d at 778.  The employer's intent and subjective belief of whether leave is protected by FMLA are irrelevant to this determination.  *Id.*; *Bachelder*, 259 F.3d at 1130.  If the plaintiff successfully demonstrates a prima facie showing that she was entitled to FMLA benefits and her employer denied her those benefits, the employer may then seek to avoid liability under the statute by establishing the employer had a legitimate reason to deny the employee the benefit to which she was otherwise entitled.  *Sanders*, 657 F.3d at 780, 781.  The regulations enacting the FMLA set forth the limitations on an employee's right to benefits.  *Sanders*, 657 F.3d at 779 (citing example regulation sections); *see also* 29 C.F.R. § 825.216(d) ("An employee who fraudulently obtains FMLA leave from an

employer is not protected by FMLA's job restoration or maintenance of health benefits provisions.").[3]

The parties do not dispute that Plaintiff was generally eligible for FMLA benefits, that Defendant was covered by the FMLA, or that Plaintiff provided sufficient notice for her two-week absence. The parties do, however, strongly dispute whether Plaintiff was entitled to FMLA leave for the leave she took and thus whether she was improperly terminated for taking FMLA-protected leave.

As relevant in this matter, the FMLA entitles an employee to take leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). This leave may be taken intermittently if the employer and employee agree. § 2612(b)(1). Thus, for Plaintiff to establish she was entitled to FMLA leave, at trial she must show by a preponderance of evidence that (1) she suffered from a serious health condition which (2) made her unable to perform the functions of her position. To defeat Defendant's summary judgment motion, Plaintiff must establish a prima facie case and a genuine dispute of material fact.

---

[3] While Defendant contends that Plaintiff fraudulently claimed FMLA leave, the Court need not address this contention as Plaintiff has failed to first meet her burden to establish a prima facie case of FMLA interference.

ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 21

A. Serious Health Condition

A "serious health condition" is an "illness, injury, impairment, or physical or mental condition that involves . . . (A) inpatient care . . . or (B) continuing treatment by a health care provider."  29 U.S.C. § 2611(11).[4]  Continuing treatment, as applicable in this case, means "[t]reatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider," or "[a]ny period of . . . treatment for . . . incapacity due to a chronic serious health condition."  29 C.F.R. § 825.102 Continuing Treatment (1)(ii), (3).[5]

Plaintiff submitted, and Defendant initially approved, requests for intermittent FMLA leave indicating that she suffered from "chronic migraine

---

[4] Plaintiff does not claim that her migraines required inpatient care nor is there any indication in the record she was ever hospitalized for her migraines.  As such, the Court focuses on whether Plaintiff's migraines required continuing treatment.

[5] Defendant asserted at oral argument that treatment must have occurred within thirty days of Plaintiff's incapacity to qualify as continuing treatment.  While "[t]reatment two or more times, within 30 days of the first day of incapacity" may qualify as continuing treatment, any one of the multiple definitions listed in § 825.102 qualifies as continuing treatment, including chronic conditions.

ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 22

1    headaches."  ECF No. 28-6 at 13, 16.  As Defendant agrees, migraine headaches

2    can be considered a serious health condition.  *See* 29 C.F.R. § 825.113(d) (". . .

3    headaches other than migraine . . . do not meet the definition of serious health

4    condition . . . ."); ECF No. 25 at 6.

5        Plaintiff, however, has produced no evidence in conjunction with her motion

6    for summary judgment to indicate that she actually suffered from migraine

7    headaches which required continuing treatment by a health care provider.

8    Conspicuously absent from Plaintiff's supporting documentation is a declaration or

9    affidavit offered by either Plaintiff or Dr. Sica attesting to Plaintiff's chronic

10   migraine condition or her treatment regimen.  Instead, the sole support Plaintiff

11   offers to establish that she has a serious health condition is treatment notes written

12   by Plaintiff's primary care physician, Dr. Allen Quinn, which indicate that Plaintiff

13   complained of headaches on three occasions in late 2009 and early 2010.  ECF No.

14   18-2 at 5–7.  Nothing in the record, however, indicates that Dr. Quinn was treating

15   Plaintiff for migraines in 2011, the timeframe relevant to this matter.[6]

---

16   [6] Dr. Sica—who completed Plaintiff's FMLA leave requests—testified that he was

17   not aware of any other doctors treating Plaintiff for migraines.  ECF No. 30-1 at 9;

18   *see also* ECF No. 28-6 at 14 ("Will not be treated by another provider at this

19   time."), 17 (same).  Dr. Sica was not aware that Dr. Quinn in particular had ever

20   treated Plaintiff for migraines.  ECF No. 30-1 at 30.  In fact, Dr. Sica never

1          Rather, to establish that she suffered from a serious medical condition

2    Plaintiff relies heavily on Dr. Sica's opinion, as expressed in the 2009 and 2010

3    FMLA leave requests that Plaintiff suffered from chronic migraines.  Plaintiff first

4    began to see Dr. Sica, a dermatologist, because of a cyst she had removed.  ECF

5    No. 30-4 at 6–7.  Dr. Sica testified in his deposition that in the course of treating

6    Plaintiff for her skin issues, he discussed with Plaintiff "what migraines were" and

7    their causes.  ECF No. 30-1 at 5.  Dr. Sica discussed migraines with Plaintiff "[a]t

8    least once or twice."  *Id.* at 6.  Dr. Sica admitted that he did "[n]ot normally" treat

9    patients for migraines and that he has treated no other patients for migraines.  *Id.* at

10   8–9.  Nevertheless, during his deposition Dr. Sica stated that, in his opinion,

11   Plaintiff had a migraine condition that required her to take time off from work

12   during 2011.  ECF Nos. 18-28 at 4; 30-1 at 27.  However, the only support Dr. Sica

13   could offer for this medical evaluation was "history," by which he meant Plaintiff's

14   description of "the pain, the occurrences."  ECF No. 30-1 at 27.  At oral argument,

15   Plaintiff contended that a medical doctor is entitled to rely on a patient's self-

16   reported symptoms.  That is true.  However here, Plaintiff has produced no

17

---

18   reviewed Plaintiff's medical records to determine if she had been previously

19   treated for migraines.  *Id.* at 13.  As such, Dr. Quinn's treatment notes cannot offer

20   support for Dr. Sica's later evaluation.

ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 24

1    evidence to support Dr. Sica's diagnosis or to show she received any treatment let

2    alone, continuing treatment.

3         To the contrary, the undisputed record evidence indicates that Plaintiff was

4    not in fact receiving continuing care for her alleged chronic migraines.  During his

5    deposition, Dr. Sica reviewed all medical records that related to his care of Plaintiff

6    and testified that the records did not contain any information to show he treated

7    Plaintiff for migraines.  ECF No. 30-1 at 15–22.  The Court's own review of the

8    totality of Dr. Sica's medical records regarding Plaintiff's treatment similarly

9    demonstrates that he made no notations regarding Plaintiff suffering from or being

10   treated for migraines.  *See* ECF No. 30-2.

11        Further, Dr. Sica testified that he never examined or observed Plaintiff while

12   she suffered a migraine and had no source of information to rely upon in assessing

13   her migraines other than her own statements.  ECF No. 30-1 at 13.  Dr. Sica could

14   not testify to the frequency or severity of Plaintiff's migraines.  *Id.* at 26–27.  Dr.

15   Sica had no information that Plaintiff's migraine headaches were affecting her

16   ability to work.  *Id.* at 14, 26, 31–32, 39.  Most important, Dr. Sica testified that he

17   never prescribed medication to Plaintiff for her migraines and was not otherwise

18   actively providing treatment for Plaintiff's migraines at the time he completed her

19   FMLA requests.  *Id.* at 5, 28.

20

1    Plaintiff has presented no evidence of "a regimen of continuing treatment

2  under the supervision of the health care provider" or of a period of treatment for an

3  incapacity.  29 C.F.R. § 825.102.  Plaintiff's briefing points to no evidence in the

4  record demonstrating that she was receiving such treatment for her migraines.  Dr.

5  Sica himself admitted that he was not actively treating Plaintiff for her alleged

6  migraines.  Thus, on this record, the allegation that Plaintiff suffered from chronic

7  migraines requiring continuing treatment is merely speculative and does not

8  demonstrate a genuine factual dispute which must be decided at trial.  *See Nelson*

9  *v. Pima Cmty. College*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation

10  and speculation do not create a factual dispute for purposes of summary

11  judgment.").  The Court concludes that Plaintiff has failed to produce sufficient

12  evidence upon which a reasonable fact-finder could conclude she suffered from a

13  serious medical condition requiring continuing medical care.  As such, Plaintiff has

14  not meet her burden to demonstrate her entitlement to FMLA leave and Defendant

15  is entitled to judgment as a matter of law.

16    B. Inability to Perform Work Functions and Medical Necessity

17    Assuming *arguendo* that Plaintiff has produced sufficient evidence of her

18  treatment for migraines to survive summary judgment on that issue, Plaintiff must

19  nevertheless also demonstrate that during each period of leave for her chronic

20  migraines, she was "unable to perform the functions of the position" in which she

was employed.  29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. § 825.202.[7]  As a chronic medical condition, Plaintiff's migraines entitled her to leave for "[a]ny period of incapacity or treatment for such incapacity due to a chronic serious health condition."  29 C.F.R. §§ 825.102, 825.115(c).  "The term incapacity means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom."  29 C.F.R. § 825.113(b).

> An employee is unable to perform the functions of the position where the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position . . . .  An employee who must be absent from work to receive medical treatment for a serious health condition is

---

[7] Plaintiff's counsel argued at oral argument that Plaintiff was not required to show that she was ever incapacitated, but instead need merely produce a note from a doctor stating that she was entitled to FMLA leave.  It may be that a doctor's note alone is sufficient when Plaintiff is applying for FMLA leave from her employer (at least until her employer requests further certification).  However, in a lawsuit seeking damages against her employer Plaintiff bears the burden of establishing that she was entitled to leave under the FMLA, including showing that she was "unable to perform the functions of the position" of her employment.  29 U.S.C. § 2612(a)(1)(D); *Sanders*, 657 F.3d at 778.

ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 27

considered to be unable to perform the essential functions of the position during the absence for treatment.

29 C.F.R. § 825.123(a).  Further, as Plaintiff was approved for intermittent leave, she must show medical necessity each time she takes leave.  29 C.F.R. §§ 825.202(b) ("For intermittent leave . . . taken because of one's own serious health condition . . . there must be a medical need for leave. . . ."), 825.203 ("Eligible employees may take FMLA leave on an intermittent . . . basis when medically necessary due to the serious health condition of . . . the employee . . . .").

Plaintiff has presented no evidence that she was unable to perform the functions of her position when she took her two-week leave in February 2011. Plaintiff points to Dr. Sica's June 3, 2011, letter as "[t]he best explanation of the reason for the leave taken by [Plaintiff.]"  ECF No. 34 at 10.  Plaintiff contends that the "leave was part of a treatment plan by her doctor to alleviate the effects of stressors in her workplace which had long been causing [Plaintiff] to experience migraine headaches, a fact well documented in her medical charts."  *Id.* at 10–11. The Court is unpersuaded by this argument.

First, and foremost, Plaintiff has failed to establish that Dr. Sica ever placed her on any type of treatment plan for her migraines.  As discussed above, Plaintiff's medical records contain no mention of such a treatment regime and Dr. Sica himself admitted he was not actively treating Plaintiff.  Therefore, Plaintiff's two-week leave could not possibly be part of any treatment plan.

ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 28

Further, Dr. Sica's June 3 letter does not establish the "medical necessity" of Plaintiff's use of her intermittent FMLA leave in February 2011. *See* 29 C.F.R. §§ 825.202(b), 825.203. In the letter, Dr. Sica opines that a "common medical practice . . . was to see if a break from the problem for a few weeks would ameliorate" Plaintiff's stressors. ECF NO. 18-26 at 4. However, Dr. Sica offers no support that this common practice was *medically necessary* for Plaintiff during this timeframe. Employees engage in many common medical practices to treat serious medical conditions, but are entitled to FMLA leave only for times in which they "*must* be absent from work to receive medical treatment." 29 C.F.R. § 825.123(a) (emphasis added). Nothing in Dr. Sica's June 3, 2011, letter indicates that Plaintiff was medically-required to take a two-week leave of absence in order to treat her chronic migraines nor does it establish that Plaintiff was unable to perform her basic work functions during this time frame.[8]

To the contrary, in his March 2013 answers to Defendant's questionnaire, Dr. Sica stated he did not consider Plaintiff incapacitated during the relevant two-week period. ECF Nos. 18 at 15; 28-6 at 25. Moreover, Dr. Sica did not

---

[8] The Court also notes that a review of the relevant medical charts kept by Dr. Sica demonstrates that Plaintiff's assertion that the diagnosis is "a fact well supported in her medical charts" is unfounded. *See* ECF No. 30-2.

ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 29

responsively answer the question whether Plaintiff was "unable to attend work during the time period of January 31, 2011 through February 14, 2011, due to [her] medical condition."  ECF No. 18-25 at 16; 28-6 at 26.  Rather, Dr. Sica's answer— he "was told Feb. 8–14 was approved FMLA vacation-time"—is insufficient to establish that Plaintiff was unable to perform essential work functions.

Similarly, Dr. Sica testified during his deposition that he did not know the frequency or severity of Plaintiff's headaches.  ECF No. 30-1 at 26–27.  Most important, Dr Sica testified that he had no information that Plaintiff's migraine headaches affected her ability to work.  *Id.* at 14, 26, 31–32, 39.

In sum, nothing in the record before the Court indicates that Plaintiff's absences relating to her alleged chronic migraines were medically necessary or that she was unable to perform essential work functions during any particular absence relevant to this matter.  Plaintiff has failed to establish a genuine dispute as to this issue and has therefore failed to carry her burden to survive summary judgment. Defendant is entitled to judgment as a matter of law.[9]

---

[9] Defendant is also entitled to summary judgment on Plaintiff's alternative theories of liability.  *See* ECF No. 16 at 11–13.  Plaintiff has not established that she suffered from a serious medical condition requiring continuing treatment at any time during her employment.  Further, Plaintiff has not established that any particular absence which she alleges Defendant relied upon in terminating her

ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 30

**ACCORDINGLY, IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**.

2. Defendant's Cross-Motion for Summary Judgment (ECF No. 25) is **GRANTED**.

The District Court Executive is hereby directed to enter this Order, enter **JUDGMENT** for Defendant on all claims, provide copies to counsel, and **CLOSE** the file.

**DATED** July 31, 2015.



THOMAS O. RICE
United States District Judge

---

employment was medically necessary or that her condition prevented her from performing the basic functions of her position when she was absent or tardy. As such, Plaintiff has failed to establish a prima facie case of FMLA interference as to any particular occasion of which she complains, and the claims cannot survive summary judgment.

ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 31